24-419
*United States v. Lawrence*

# United States Court of Appeals
# For the Second Circuit

August Term 2024
Argued: December 13, 2024
Decided: June 2, 2025

No. 24-419-cr

UNITED STATES OF AMERICA

*Appellee*,

*v.*

ANDREW LAWRENCE, AKA SNACKS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of New York
No. 1:23-cr-228
Denise L. Cote, *Judge*.

Before: PARK, MENASHI, and KAHN, *Circuit Judges*.

Andrew Lawrence pleaded guilty to selling drugs, including crack cocaine, and was sentenced to 36 months of imprisonment and a three-year term of supervised release. Lawrence now challenges the procedural and substantive reasonableness of that sentence. First, he claims that the district court failed to address the Sentencing Guidelines' differential treatment of crack and powder cocaine. Second, Lawrence argues that a supervised release condition permitting him to be searched upon reasonable suspicion is not supported by an adequate on-the-record justification.

We reject Lawrence's arguments. The district court acted within its discretion in treating crack and powder cocaine offenses differently, and it did not need to address the parties' policy arguments to the contrary. The district court also reasonably imposed a limited search condition, which was justified by the court's adoption of the reasons provided in Lawrence's Pre-Sentence Report. We thus **AFFIRM** the judgment of the district court.

———

> ANDREW JONES (*with* Nathan Rehn *on the brief*), Assistant United States Attorneys, Of Counsel, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.
>
> DANIEL HABIB, Of Counsel, Federal Defenders of New York, New York, NY, *for Defendant-Appellant*.

———

PARK, *Circuit Judge*:

Andrew Lawrence pleaded guilty to selling drugs, including crack cocaine, and was sentenced to 36 months of imprisonment and a three-year term of supervised release. Lawrence now challenges the procedural and substantive reasonableness of that sentence. First, he claims that the district court failed to address the Sentencing Guidelines' differential treatment of crack and powder cocaine. Second, Lawrence argues that a supervised release condition permitting him to be searched upon reasonable suspicion is not supported by an adequate on-the-record justification.

We reject Lawrence's arguments. The district court acted within its discretion in treating crack and powder cocaine offenses differently, and it did not need to address the parties' policy arguments to the contrary. The district court also reasonably imposed a limited search condition, which was justified by the court's adoption of the reasons provided in Lawrence's Pre-Sentence Report. We thus affirm the judgment of the district court.

## I. BACKGROUND

A.  <u>Factual History</u>

Over a four-month span, Lawrence made six drug sales to a confidential government source. Each time, he used a cellphone to text the source about the quantity and type of drug he was selling, as well as when and where to meet. In total, Lawrence sold over five grams of crack cocaine, 14 grams of powder cocaine, and one gram of fentanyl and fentanyl analogues. A subsequent search of Lawrence's bedroom uncovered additional crack cocaine, powder cocaine, and

fentanyl, as well as ammunition for a .32-caliber firearm and $1,800 in cash.

Lawrence has three prior state convictions and a prior federal conviction for unlawful possession of a firearm. He was still serving the term of supervised release on his federal conviction when he committed the offense at issue.

B.     Procedural History

The government charged Lawrence with six counts of distributing and possessing with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He pleaded guilty.

The Probation Office then prepared a Pre-Sentence Report ("PSR") that calculated Lawrence's recommended sentence under the United States Sentencing Guidelines. To do so, it combined the various drugs Lawrence had possessed and distributed into a "converted drug weight." U.S.S.G. § 2D1.1 cmt. 8(B). The Guidelines specify that one gram of crack cocaine equals 3,571 grams of converted drug weight, one gram of powder cocaine equals 200 grams of converted drug weight, one gram of fentanyl equals 2,500 grams of converted drug weight, and one gram of fentanyl analogue equals 100,000 grams of converted drug weight. *Id.* cmt. 8(D). Lawrence's offense involved a total converted drug weight of 99.14 kilograms.[1]  Given his criminal history and offense characteristics,

---

[1] Lawrence possessed and distributed 17.908 grams of crack cocaine (63.95 kgs of converted drug weight), 14.92 grams of powder cocaine (2.98 kgs of converted drug weight), 11.412 grams of fentanyl (28.53 kgs of

that translated into a recommended sentence of 33 to 41 months of imprisonment.

The PSR also recommended a three-year term of supervised release. Among other conditions of that term of supervised release, the PSR proposed requiring Lawrence to "submit [his] person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search . . . when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct." Lawrence Br. at 19.

Lawrence and the government both argued for a term of imprisonment shorter than the PSR's sentencing range calculation. In particular, the parties objected to the Guidelines' differential treatment of crack and powder cocaine. As noted above, the converted drug weight of one gram of crack cocaine is 3,571 grams, but the converted drug weight of one gram of powder cocaine is only 200 grams. U.S.S.G. § 2D1.1 cmt. 8(D). In this sense, the Guidelines punish crack-cocaine offenses almost 18 times more severely than powder-cocaine offenses.

The parties asked the district court to disregard this disparity by sentencing Lawrence as if the crack cocaine he possessed and distributed were actually powder cocaine. If that were the case, Lawrence's offense would have involved a converted drug weight of

---

converted drug weight), and .368 grams of fentanyl analogue (3.68 kgs of converted drug weight). 63.95 + 2.98 + 28.53 + 3.68 = 99.14 kgs of converted drug weight.

5

38.77 kilograms, rather than 99.14 kilograms. So his sentencing range would have been 15 to 21 months of imprisonment, instead of 33 to 41 months.

At Lawrence's sentencing hearing, the district court rejected this proposal. It noted that the parties "are both arguing to me about where the sentence should fall, as if we had a . . . conversion of the amount of crack into what would be counted if it were instead [powder] cocaine." Joint App'x at 115. But the court sentenced Lawrence to 36 months of imprisonment, which was within the Guidelines range of 33 to 41 months, not the parties' proposed range of 15 to 21 months.

The district court explained that it was sending Lawrence "a message that tells [him] you have to change the trajectory of your life." Joint App'x at 135. After his prior offenses, Lawrence "did not take advantage of . . . opportunities to show that he can change his life in a way that would comply with the requirements of the law," *id.* at 119, so the court urged Lawrence "to use this time to think deeply about the path you're on," *id.* at 135.

The district court also directed the parties' attention to "the PSR and the special conditions [it] recommended." Joint App'x at 117. The court said those conditions "seem[ed] appropriate," so it required Lawrence to "submit [his] person to a reasonable search as described in the PSR." *Id.* at 118, 136.

## II. STANDARD OF REVIEW

We review sentences—including conditions of supervised release—for procedural and substantive reasonableness. This

"amounts to review for abuse of discretion." *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008).

Procedural reasonableness assesses "the procedure employed in arriving at the sentence." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). For example, a "district court commits procedural error where it fails to calculate the Guidelines range . . . or treats the Guidelines as mandatory." *Cavera*, 550 F.3d at 190.

Substantive reasonableness assesses whether a sentence, "although procedurally correct, [is] . . . unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). "[W]e will not substitute our own judgment for the district court's on the question of what [sentence] is sufficient," *Cavera*, 550 F.3d at 189, so substantive reasonableness "provide[s] relief only in the proverbial 'rare case,'" *Rigas*, 583 F.3d at 123.

## III. DISCUSSION

Lawrence argues that his 36-month term of imprisonment and the search condition of his supervised release are procedurally and substantively unreasonable. We reject both challenges.

A.  Term of Imprisonment

   1.  *Procedural Reasonableness*

Lawrence argues that his term of imprisonment is procedurally unreasonable because the district court did not (1) explain why it imposed a 36-month sentence, or (2) address the parties' argument for sentencing him as if the crack cocaine he sold and distributed were actually powder cocaine. *Cf.* 18 U.S.C. § 3553(c) (requiring a court to

7

"state in open court the reasons for its imposition of the particular sentence"). Lawrence says these mistakes were magnified because the court was "applying the crack Guideline," which is especially "dubious" and must be handled "with great care." Lawrence Br. at 41 (quotation marks omitted).

"[W]hen a judge decides simply to apply the Guidelines to a particular case," no "lengthy explanation" is needed. *Rita v. United States*, 551 U.S. 338, 356 (2007). "Circumstances may well make clear that the judge rests his decision upon the [Sentencing] Commission's own reasoning that the Guidelines sentence is a proper sentence," *id.* at 357, so it is sufficient for the district court to "state[] simply that the Guidelines sentence imposed was 'appropriate,'" *Chavez-Meza v. United States*, 585 U.S. 109, 117 (2018) (quotation marks omitted).

The district court here did more than that. It discussed Lawrence's criminal history, which showed he had "not take[n] advantage of . . . opportunities to . . . change his life in a way that would comply with the requirements of the law." Joint App'x at 119. In light of this history, the court explained that it was imposing a sentence that would give Lawrence "time to think deeply about the path you're on" and send "a message that [says] you have to change the trajectory of your life." *Id.* at 135.

The district court did not need to address the sentencing disparity between crack and powder cocaine. "We have time and time again made it clear" that a district court need not "make specific

8

responses to points argued by counsel in connection with sentencing." *United States v. Bonilla*, 618 F.3d 102, 111 (2d Cir. 2010).[2]

We also reject Lawrence's novel suggestion that certain within-Guidelines sentences require more explanation than others. There is no such distinction in the text of 18 U.S.C. § 3553(c), which merely requires that the court "state . . . the reasons for its imposition of the particular sentence." If a defendant believes the reasons for the sentence are "dubious," that goes to whether the punishment is "unsupportable as a matter of law." *Rigas*, 583 F.3d at 123. But it does not call into question "the procedure employed in arriving at the sentence." *Johnson*, 567 F.3d at 51.

2. *Substantive Reasonableness*

Lawrence argues that his sentence is substantively unreasonable because the Guidelines' differential treatment of crack and powder cocaine "lacks empirical grounding, yields irrational results, and, worst of all, visits disproportionately severe punishment on Black defendants." Lawrence Br. at 41.[3] He thus compares his

---

[2] *See also, e.g.*, *United States v. Salim*, 690 F.3d 115, 127 (2d Cir. 2012) ("While the district court did not directly reject Salim's argument . . . we have never required judges to [do so]."); *United States v. Thomas*, 628 F.3d 64, 72 (2d Cir. 2010) ("[W]e have rejected the notion that a district court must respond specifically to even a non-frivolous argument concerning a policy disagreement with [the] Guidelines."); *United States v. Villafuerte*, 502 F.3d 204, 210 (2d Cir. 2007) ("[W]e do not insist that the district court address every argument the defendant has made.").

[3] The Sentencing Commission has at times noted that "the crack/powder sentencing disparity is generally unwarranted," but it has

9

sentence to one we found substantively unreasonable in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010). In *Dorvee*, we pointed to "serious flaws in § 2G2.2," *id.* at 182, and concluded that "application of the Guidelines in Dorvee's case led to an irrational result," *United States v. Brown*, 843 F.3d 74, 83 (2d Cir. 2016). Lawrence says the same is true here: There are serious flaws in the Guidelines' treatment of crack-cocaine offenses, so his within-Guidelines sentence is substantively unreasonable.

We reject this argument for two reasons. First, it overreads *Dorvee*. "In *Dorvee*, we did not impose a heightened standard for the application of § 2G2.2," *United States v. Clarke*, 979 F.3d 82, 99 (2d Cir. 2020), or "require courts to disregard the guidelines entirely," *United States v. Caraher*, 973 F.3d 57, 64-65 (2d Cir. 2020). In fact, "[w]e have never held that a district court is required to reject an applicable Guideline." *Salim*, 690 F.3d at 126. *Dorvee* merely held that "straightforward application" of § 2G2.2 "'can lead to unreasonable sentences'" for the least culpable subset of eligible defendants—*i.e.*, first-time offenders who were "not involved in production of child pornography and had no contact with children." *United States v. Muzio*, 966 F.3d 61, 65 (2d Cir. 2020) (quoting *Dorvee*, 616 F.3d at 184).

Second, we have repeatedly rejected efforts to expand *Dorvee*'s substantive-reasonableness holding beyond the "eccentric" § 2G2.2

---

never urged the "*identical* treatment of crack and powder cocaine" that Lawrence seeks. *Kimbrough v. United States*, 552 U.S. 85, 98 (2007) (emphasis added). "[C]rack is more addictive than powder, crack offenses are more likely to involve weapons or bodily injury, and crack distribution is associated with higher levels of crime." *Id.*

10

Guideline. *Dorvee*, 616 F.3d at 187; *see, e.g.*, *United States v. Perez-Frias*, 636 F.3d 39 (2d Cir. 2011) (illegal reentry); *Salim*, 690 F.3d 115 (terrorism); *Bonilla*, 618 F.3d 102 (crime of violence). This is because "the relevant flaw we identified in *Dorvee*" was unique—namely, that "Congress ignored the Commission and directly amended the Guideline" itself. *Perez-Frias*, 636 F.3d at 43. *Dorvee* described this as the single "most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress." 616 F.3d at 185 (quotation marks omitted).[4]

Section 2G2.2 is a limited and singular exception to the rule "that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that [are] reasonable." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). That rule reflects the fact that when we consider "a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing

---

[4] In passing, *Dorvee* compared § 2G2.2 to "the Guidelines' treatment of crack cocaine convictions," 616 F.3d at 188, but we have recognized that this comparison was dicta, *see, e.g.*, *United States v. Cox*, 458 F. App'x 79, 83 (2d Cir. 2012). Unlike § 2G2.2, the Sentencing Commission "chose" to "key the Guidelines to the statutory mandatory minimum sentences that Congress established for [drug] crimes." *Gall v. United States*, 552 U.S. 38, 46 n.2 (2007). And Congress's mandatory minimums have also been shaped by the Commission's input. The crack-powder sentencing differential was once 100 to 1, but after the Commission "recommended lowering the ratio at least to 20 to 1," *Kimbrough*, 552 U.S. at 99 (quotation marks omitted), Congress adopted the 18 to 1 ratio in place today, *see Dorsey v. United States*, 567 U.S. 260, 269 (2012).

11

Commission will have reached the *same* conclusion as to the proper sentence in the particular case." *Rita*, 551 U.S. at 347.[5]

B.     Search Condition

    1.     *Procedural Reasonableness*

"[F]or the imposition of special conditions of supervised release to be procedurally reasonable, a District Court must make an individualized assessment" that includes "findings specific to the defendant." *United States v. Sims*, 92 F.4th 115, 123 (2d Cir. 2024) (quotation marks omitted). The court must also "state on the record the reason for imposing" the condition by "connecting those findings to the . . . factors that would justify including the special condition." *Id.* (quotation marks omitted).[6]

Lawrence argues that the district court did not follow this procedure when it imposed the search condition. He says the court

---

[5] To be sure, "district courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears v. United States*, 555 U.S. 261, 265-66 (2009). But when as here a district court opts not to vary, it does not abuse its discretion in doing so.

[6] If a condition of supervised release "implicates a constitutional right" in an "unusual and severe" way, that goes only to the substantive reasonableness of the condition. *United States v. Eaglin*, 913 F.3d 88, 95 (2d Cir. 2019). It does not affect the procedural reasonableness of the court's explanation. *Cf. United States v. Kunz*, 68 F.4th 748, 760 (2d Cir. 2023) (finding justification for computer monitoring condition procedurally reasonable despite "brusque and generalized explanation").

12

noted only that the condition "seems appropriate," which is an insufficient explanation.

We reject Lawrence's argument because it overlooks that the district court adopted the search condition from the PSR.[7] *See* Joint App'x at 136 (requiring Lawrence to "submit [his] person to a reasonable search as described in the PSR"). When a court adopts recommendations in the PSR, it satisfies its obligation to make findings as long as the PSR "state[s] enough facts to permit meaningful appellate review." *United States v. Rainford*, 110 F.4th 455, 476 (2d Cir. 2024) (quotation marks omitted). Adopting the PSR also states the court's reasons in open court because the PSR provides the grounds for the sentence imposed. *See United States v. Molina*, 356 F.3d 269, 277 (2d Cir. 2004). For these reasons, our assessment of the procedural reasonableness of a condition of supervised release looks to "[t]he district court's comments, *as well as the PSR's . . . justifications* for the application of [the] condition." *United States v. Bryant*, 976 F.3d 165, 184 (2d Cir. 2020) (emphasis added).

Lawrence's PSR contained a lengthy discussion of his criminal history, personal background, and offense conduct. At the sentencing hearing, the district court directed the parties' attention to the special conditions recommended in the PSR, "effectively incorporating them by reference." *United States v. Arguedas*, 134 F.4th 54, 69 (2d Cir. 2025). That satisfied the district court's obligation to make an individualized

---

[7] We find no procedural error in the district court's explanation, so we need not consider whether any error was harmless because "the court's reasoning is self-evident in the record." *Sims*, 92 F.4th at 124 (quotation marks omitted).

13

assessment and state on the record the reason for imposing the search condition.

To be sure, the PSR did not discuss why Lawrence's criminal history called for a search condition in particular, or why the condition should allow for searches of Lawrence's computer specifically. But the explanation for a special condition need not be so precise. *See Kunz*, 68 F.4th at 760 ("The court was under no obligation to . . . pick through every condition and explain, point-by-point, how each was responsive to the offending conduct."). The specific obligation to state on the record the reason for imposing a special condition is merely a subset of the broader requirement to "state in open court the reasons for . . . the particular sentence." 18 U.S.C. § 3553(c). And that requirement leaves the "appropriateness of brevity or length" to "the judge's own professional judgment." *Rita*, 551 U.S. at 356; *see also United States v. Jenkins*, 854 F.3d 181, 194 (2d Cir. 2017) ("[A] district court is under no obligation to provide elaborate reasons for the sentence it imposes.").[8]

---

[8] The PSR's discussion of Lawrence's criminal history also provided an "individualized assessment." *Sims*, 92 F.4th at 123 (quotation marks omitted). A "district court fail[s] to make an individualized assessment" only when it relies "on broad statements . . . untethered to any specific consideration to the facts and circumstances." *United States v. Oliveras*, 96 F.4th 298, 314 (2d Cir. 2024). Here, the PSR described Lawrence's background and offense conduct, which were "case-specific reasons," that offered "precisely the type of individualized assessment our precedent requires." *United States v. Poole*, 133 F.4th 205, 212 (2d Cir. 2025) (quotation marks omitted).

14

2. *Substantive Reasonableness*

Lawrence argues that the search condition is an "extraordinary invasion of [his] constitutional privacy" that must be "narrowly tailored." Lawrence Br. at 22, 48 (quotation marks omitted). And he says the search condition fails to meet that standard because it allows for searches of his computer, even though he used only a cellphone to sell drugs.

We reject Lawrence's argument for three reasons. First, we require "narrow tailoring" only when a "special condition implicates a fundamental liberty interest." *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005). A search condition that requires reasonable suspicion does not implicate such a fundamental interest because "an offender on supervised release has a diminished expectation of privacy that is inherent in the very term '*supervised* release.'" *United States v. Lewis*, 125 F.4th 69, 77 (2d Cir. 2025) (cleaned up); *see also Mont v. United States*, 587 U.S. 514, 523 (2019) ("Supervised release . . . permits a defendant a kind of conditional liberty.").

Second, even when a supervised release condition must be narrowly tailored, "the overarching inquiry is as to reasonableness," *United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013), and "we will not substitute our own judgment for the district court's," *Cavera*, 550 F.3d at 189. In that sense, our review of narrowly tailored conditions is comparable to our review of terms of imprisonment, which, in their own right, must be "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Just as we would not second-guess why Lawrence's term of imprisonment was 36 months and not 35, our assessment of whether Lawrence's search condition is narrowly

15

tailored likewise "should exhibit restraint, not micromanagement." *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir. 2005). Otherwise, narrow tailoring would "be an invitation to mischief by tinkering with any sentence that appellate judges simply do not like." *Rigas*, 583 F.3d at 123.[9]

Finally, the search condition did not need to have a direct relationship to Lawrence's offense. A district court may impose a condition unrelated to "the nature and circumstances of the offense" if (1) it is "reasonably related" to "the history and characteristics of the defendant" or "the need . . . to afford adequate deterrence," "protect the public from further crimes," and "provide the defendant with . . . correctional treatment"; and (2) the condition "involve[s] no greater deprivation of liberty than is reasonably necessary." U.S.S.G. § 5D1.3(b). Given this flexibility, "we have never held that an electronic search term would only be appropriate . . . if [a defendant's] convictions involved . . . the use of electronics." *United States v. Robinson*, 134 F.4th 104, 112 (2d Cir. 2025). So although Lawrence used only a cellphone to sell drugs, "we cannot conclude that this is the rare case that cannot be located within the range of

---

[9] In *United States v. Oliveras*, we noted "we have not hesitated to remand . . . where a less intrusive condition appeared to be a viable option." 96 F.4th at 316 (quotation marks omitted). But *Oliveras* was referring to a case in which the district court changed the conditions of a defendant's supervised release, *see Eaglin*, 913 F.3d at 88, so by "viable option," we merely meant "the earlier . . . restriction," *id.* at 98. Beyond this limited context in which a court changes a condition of supervised release, we have never suggested that it is appropriate to compare the special conditions a district court actually imposed to those it hypothetically could have.

16

permissible decisions." *Rigas*, 583 F.3d at 124 (quotation marks omitted).

## IV. CONCLUSION

Lawrence's term of imprisonment and conditions of supervised release are procedurally and substantively reasonable. We thus affirm the judgment of the district court.